# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

v.                                                Case No. 07-CR-81

**ANTHONY DISMUKE**
        **Defendant.**

## DECISION AND ORDER

A jury convicted defendant Anthony Dismuke of possessing firearms as a felon. Defendant moves for entry of a judgment of acquittal, Fed. R. Crim. P. 29, or a new trial, Fed. R. Crim. P. 33.

## I. MOTION FOR ACQUITTAL

In deciding a motion for acquittal, the court must determine whether, at the time of the motion, there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences. United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). Because "Rule 29(c) does not authorize the judge to play thirteenth juror," the court may not entertain an independent view of the evidence in ruling on such a motion. United States v. Genova, 333 F.3d 750, 757 (7th Cir. 2003). Rather, a judgment of acquittal should be entered "only if, viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a guilty verdict." United States v. Murphy, 406 F.3d 857, 861 (7th Cir. 2005);

see also United States v. Gallardo, 497 F.3d 727, 737 (7th Cir. 2007) (stating that the burden facing a defendant challenging the sufficiency of the evidence presented to a jury is an "uphill battle" and "nearly insurmountable.").

In the present case, defendant moved for acquittal at the close to the government's case, renewed the motion at the close of all the evidence, and filed a timely written motion after the verdict. I reserved decision on the motions made during trial and now conclude that all of the motions must be denied.

The government presented sufficient evidence in its case-in-chief to persuade a reasonable jury to convict. City of Milwaukee Police Officer Anthony Randazzo testified that on January 29, 2007, he and other officers executed a no-knock search warrant at 2528 West Locust Street, which they believed to be defendant's residence, looking for guns. Randazzo testified that officers encountered defendant inside the house, and that after he (Randazzo) read the warrant, defendant yelled that of course there were guns in the house, everybody on the block had guns. Randazzo testified that he searched an upstairs bedroom in which he found male and female clothing, two .25 caliber handguns (under the bed), .25 caliber ammunition, photos of defendant (including one of him in the bed under which the guns were found), defendant's unexpired passport, and various utility bills bearing defendant's name and the address of 2528 West Locust.[1]

Officer Jeffery Thiele testified that he stayed with defendant during the warrant execution, and that during this time defendant stated that officers would find two guns upstairs.

---

[1]Officer Michael Wawrzyniakowski, who participated in the search of this bedroom, testified that the photos were recovered from an armoire, WE Energy bills from a dresser and T-Mobile bills from under the mattress.

2

Defendant also stated that while he owned the two firearms, it was "no big deal." Thiele further testified that he later encountered defendant at the Locust Street residence when he tried to serve subpoenas there, and that he saw defendant's car parked there on several occasions.[2]

Detective Michael Kurowski testified that he interviewed defendant both at the Locust Street house and later at the police station. At the scene, defendant stated that there were only two .25's in the house, which he referred to as "pea-shooters." He also stated that the guns were there for protection. At the station, defendant made conflicting statements about his current residence; at one point he stated that he had lived in the Locust Street house for thirty years; later he stated that for several months he had been staying with his ex-wife's sister on South Bonny, and that he was at the Locust Street house that day only to drop off his granddaughter. Defendant described the guns officers found as "raggedly ass .25's with five bullets in both clips and one clip empty." He also said, "but that ain't shit though man. Five fucking bullets in the .25's. That's just enough for a mother-fucker to sleep comfortable." He further stated that he allowed the guns in the house for "protection" and denied that the guns had been used. However, he also said that the guns belonged to his children, who were not felons, and that after he investigated his family he would find someone to claim the guns.

This evidence was sufficient. Officers found the guns in a bedroom containing numerous documents and other items identifying defendant, see, e.g., United States v. Richardson, 208 F.3d 626, 632 (7th Cir. 2000) (citing United States v. Kitchen, 57 F.3d 516, 519-21 (7th Cir. 1995) (establishing constructive possession over firearms where papers and notes bearing the defendant's name and a bracelet with the defendant's nickname were found

---

[2]Thiele testified that on one of those occasions defendant became upset and told Thiele to stop fucking with his family, it was him they wanted.

3

in the same room of defendant's girlfriend's home as the guns)), and defendant made statements demonstrating knowledge of and suggesting ownership and control over the guns.

The defense case does not require a difference result. Defendant's daughter, Melanie Coley, testified that she lived at 2528 West Locust with her mother, Ella Coley, and that her parents were divorced. She stated that she never saw her father with guns or saw any guns at 2528 West Locust. She testified that she believed defendant lived with her aunt on Bonny Place.

Ella Coley testified that she divorced defendant in 2003, and that he lived elsewhere after the divorce. She stated that after he moved out she had the locks changed and did not give him a key, and that he left some of his belongings behind. She testified that the photos of defendant and other family members recovered by police had been taken years ago, before the divorce. She stated that while it was possible her children or grandchildren had let defendant into the house after he moved out, he never stayed there overnight. She said that the bedroom from which the guns were recovered was a guest room, and that various family members had stayed there. She stated that she kept the utilities in defendant's name after he moved out, but that she paid the bills. She also stated that defendant had a line on her cell phone plan, for which she also paid. She testified that she had never seen defendant or any of her kids with a gun, and that neither she nor her children possessed firearms.

Finally, defendant's granddaughter, Aniyah Patrick, testified that on January 29, 2007, defendant took her to 2528 West Locust after school, and they used her key to get inside. She stated that when the police entered the house, she and defendant tried to run upstairs, but the officers stopped them. She was told to sit on a love seat in the living room until her mother arrived, at which point she was allowed to leave. On cross examination, Aniyah admitted that

4

she previously told the grand jury that defendant lived at 2528 West Locust.[3]

The jury was not required to believe the testimony that defendant no longer lived at or had control over the house located at 2528 West Locust, given his statements to police, Officer Thiele's observations and Aniyah's grand jury testimony. Nor was the jury required to believe Ella Coley's explanation for all of the utility and phone bills found in the bedroom containing the guns.[4] Thus, a reasonable jury could convict based on the record at the close of all of the evidence.

In his post-verdict motion, defendant attempts to analyze the evidence in isolation, rather that its totality. Thus, he notes that a "defendant's mere presence in a dwelling where a prohibited item was found, without more, is not sufficient to establish constructive possession." United States v. Quilling, 261 F.3d 707, 712 (7th Cir. 2001). This is indeed the law, as the jury was instructed in this case. (Jury Instructions [R. 48] at 16.) As discussed above, the government relied on more than defendant's presence in the house on January 29, 2007. See United States v. Starks, 309 F.3d 1017, 1022-26 (7th Cir. 2002) (rejecting mere presence argument based on the totality of the circumstances). Defendant's reliance on United States v. Reese, 775 F.2d 1066, 1073 (9th Cir. 1985), where the court held that constructive possession could not be based on joint occupancy alone, is also misplaced. Again, the government presented more than evidence of joint occupancy in this case, including statements suggesting control over the guns. See United States v. Craven, 478 F.2d 1329,

---

[3]Because Aniyah made this prior statement under oath, it was not hearsay. Fed. R. Evid. 801(d)(1)(A).

[4]For instance, the jury could reasonably question why, if the cell phone plan was Ella Coley's (and defendant merely had a line on her plan), the bills came in defendant's name.

5

1333 (6th Cir.1973) (holding that while possession of a residence alone is insufficient to establish possession of all the contents of the house, evidence of the defendant's constructive possession of the house combined with admissions that he collected guns was sufficient to establish constructive possession of an unregistered firearm), cited with approval in Reese, 775 F.2d at 1073.[5]

Defendant notes that the government did not offer physical evidence, such as fingerprints, but such evidence is not required to sustain a conviction. Defendant also contends that the uncontroverted evidence was that he did not have a key to the residence; however, based on Aniyah's grand jury testimony that defendant lived at 2528 W. Locust and Officer Thiele's observations of defendant at that location when he tried to serve subpoenas, the jury did not have to believe the defense presentation on this issue.

Defendant concedes that officers found documents identifying him in the same room as the guns. However, he contends that such documents were not associated with the firearms in any relevant way. He relies on United States v. Taylor, 113 F.3d 1136, 1145-46 (10th Cir. 1997), in which the court held that documents identifying the defendant found in the same room as a gun were insufficient to establish constructive possession. Taylor is distinguishable. In that case, the court noted that joint occupancy alone is insufficient to sustain a conviction; "the government must present some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." 113 F.3d at 1145 (internal quote marks omitted). In the present case, the government presented defendant's own statements, which demonstrated such knowledge and access. This was not a case where

---

[5]Craven was later abrogated on other grounds. See United States v. Singleton, 902 F.2d 471, 473 (6th Cir. 1990).

6

the government relied solely on joint occupancy, as evidenced by receipts and other documents bearing the defendant's name. See, e.g., United States v. Colonna, 360 F.3d 1169, 1179-80 (10th Cir. 2004) (distinguishing Taylor where the government presented additional evidence, including the defendant's statement demonstrating knowledge of the gun).[6]

Defendant notes that the government failed to prove how the physical evidence came to be located in the bedroom or when it was placed there. However, he cites no authority for the proposition that such proof is necessary in a constructive possession case. Defendant cites his ex-wife's testimony that these items were either left behind after he moved out or reflected the fact that she never changed the utility accounts. As discussed above, the jury was not required to accept her explanation in light of the other evidence.

Defendant further notes that the guns were small in size and tucked under the bed. However, defendant made statements acknowledging the guns. This was not a case, like United States v. Moses, No. 05-CR-200, 2006 WL 2792856 (E.D. Wis. Sept. 28, 2006), where the government relied on the presence of numerous guns and ammunition in a mute defendant's house to show possession.

Defendant next argues that his recorded statements were too ambiguous to prove possession. Citing United States v. Thomas, 321 F.3d 627 (7th Cir. 2003), he contends that his statements acknowledging the guns to Officer Thiele cannot be equated with dominion and control over them. Thomas is easily distinguished, on the law and the facts. While the Thomas

---

[6]In United States v. Beverly, 750 F.2d 34, 36 (6th Cir. 1984), the court held that the defendant's presence in another's home, standing close to a waste basket that contained two guns, one of which he had at some point touched, was insufficient. In this case, conversely, the government presented evidence that defendant lived at 2528 W. Locust, and defendant made statements acknowledging the guns.

7

court did discuss a defendant's statements about a gun, it did so in the context of assessing harmless error based on the district court's erroneous admission of evidence; the case did not involve a review of the sufficiency of the evidence. The Thomas defendant said: "You could have shot me in my toe. I would have never gave up that gun," and "Yeah, that's the gun. I bought it in the streets." Id. at 635-36. The court indicated that while it did not believe these statements constituted an admission to possession of the gun, it later held that "it is certainly possible that a jury could conclude that Thomas possessed a firearm that night, [but] we do not believe that the government can show that the admission of [the challenged evidence] was harmless when the jury was drawing those inferences." Id. at 636. In other words, based on the relative weakness of the evidence, the court could not find harmless error. The gun in Thomas was also found in a very different location than in the present case – "under the apartment building's entrance stairs, a public area Thomas did not control. There is no indication that Thomas lived in the apartment building, . . . and therefore constructive possession could not be established by his mere proximity to the firearm." Id. at 636. In the present case, the guns were found in a private area, a bedroom containing identifiers for defendant, and defendant stated that he allowed the guns in the home for protection, a statement suggesting a present ability to control, not merely past ownership or possession.

Defendant also reviews the statements he made to Officer Randazzo and Detective Kurowski, noting that they were contradictory in many respects. The jury, not the court, resolves evidentiary conflicts and draws reasonable inferences from the evidence. See United States v. Cunningham, 108 F.3d 120, 121 (7th Cir. 1997) ("It is the jury's exclusive function to evaluate the credibility of witnesses, resolve conflicts in evidence, and draw reasonable inferences from the evidence presented.") (internal quote marks omitted). While

8

defendant's take on his statements may be reasonable, the jury could reasonably construe the evidence otherwise.

Therefore, for all of these reasons, the Rule 29 motions will be denied.

## II. MOTION FOR NEW TRIAL

The court may grant a new trial if the "interest of justice so requires." Fed. R. Crim. P. 33; United States v. Walton, 217 F.3d 443, 450 (7th Cir. 2000). Relief under Rule 33 is reserved for exceptional circumstances, such as where legal errors or admissions deprived the defendant of a fair trial, United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989), or the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand, Reed, 875 F.2d at 113.

Defendant raises four grounds for a new trial. First, he argues that the government's evidence was obtained and derived from an unconstitutional search. For the reasons stated in my decision denying defendant's motion to suppress (R. 32), the argument lacks merit.

Second, defendant claims that I erred in admitting the documents and photographs found in the bedroom with the guns, which he sought to have excluded in a motion in limine. I previously denied that motion on the record (R. 45 at 1) and in a written follow-up decision (R. 44). The government offered this evidence to link defendant to the bedroom from which officers seized the guns, a use sanctioned by the Seventh Circuit. See, e.g., United States v. Serrano, 434 F.3d 1003, 1005 (7th Cir. 2006); Richardson, 208 F.3d at 632; Kitchen, 57 F.3d at 520. Defendant asks me to reconsider that ruling in light of the "uncontroverted" testimony of his ex-wife that he left certain of those items behind after he moved out, and that the utility bills reflected the fact that she did not change the subscriber information after he left. However, defendant cites no authority for the proposition that otherwise admissible,

9

defendant's take on his statements may be reasonable, the jury could reasonably construe the evidence otherwise.

Therefore, for all of these reasons, the Rule 29 motions will be denied.

## II. MOTION FOR NEW TRIAL

The court may grant a new trial if the "interest of justice so requires." Fed. R. Crim. P. 33; United States v. Walton, 217 F.3d 443, 450 (7th Cir. 2000). Relief under Rule 33 is reserved for exceptional circumstances, such as where legal errors or admissions deprived the defendant of a fair trial, United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989), or the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand, Reed, 875 F.2d at 113.

Defendant raises four grounds for a new trial. First, he argues that the government's evidence was obtained and derived from an unconstitutional search. For the reasons stated in my decision denying defendant's motion to suppress (R. 32), the argument lacks merit.

Second, defendant claims that I erred in admitting the documents and photographs found in the bedroom with the guns, which he sought to have excluded in a motion in limine. I previously denied that motion on the record (R. 45 at 1) and in a written follow-up decision (R. 44). The government offered this evidence to link defendant to the bedroom from which officers seized the guns, a use sanctioned by the Seventh Circuit. See, e.g., United States v. Serrano, 434 F.3d 1003, 1005 (7th Cir. 2006); Richardson, 208 F.3d at 632; Kitchen, 57 F.3d at 520. Defendant asks me to reconsider that ruling in light of the "uncontroverted" testimony of his ex-wife that he left certain of those items behind after he moved out, and that the utility bills reflected the fact that she did not change the subscriber information after he left. However, defendant cites no authority for the proposition that otherwise admissible,

9

incriminating evidence becomes inadmissible simply because the defense later offers an innocent explanation for its presence. Further, as discussed above, the government presented evidence casting doubt on the defense theory that defendant had moved out of the house long before officers seized the guns, including defendant's statements to law enforcement indicating that he lived in the house, Officer Thiele's observation of defendant at the house when he attempted to serve subpoenas, and Aniyah Patrick's grand jury testimony that defendant lived there. Finally, although it is true that under Rule 33, unlike Rule 29, the court may weigh evidence and evaluate credibility, United States v. Eberhart, 388 F.3d 1043, 1052 (7th Cir. 2004), rev'd on other grounds, 546 U.S. 12 (2005), under the circumstances of this case, it would be inappropriate for me to conclude that defendant's substantial rights have been jeopardized, Kuzniar, 881 F.2d at 470 (stating that conflicting testimony and questions of credibility are generally not sufficient grounds for granting a new trial, and only in exceptional circumstances should the court take the testimony away from the jury), and upset the credibility determination apparently made by the jury.[7]

Third, defendant agues that Jury Instruction No. 16 ("Date of Crime Charged") was erroneous. However, defendant agreed to the court's proposed instructions (R. 46 at 1), waiving any later challenge. See United States v. Murry, 395 F.3d 712, 717 (7th Cir. 2005);

---

[7]Defendant notes that the identifying items were not seized from the same precise location as the guns. He again cites Taylor, 113 F.3d at 1145-46, for the proposition that bills, photos and receipts found in the same room as a gun do not establish constructive possession. However, Taylor did not find such evidence inadmissible; rather, it found the evidence, standing alone, insufficient to establish guilt beyond a reasonable doubt. As discussed above, the government presented additional evidence in this case, including admissions by defendant. Further, for the reasons stated in my written decision denying defendant's motion in limine, the dates on the items recovered from the bedroom containing the guns are irrelevant to their admissibility. (R. 44 at 6-7.)

10

United States v. Briggs, 291 F.3d 958, 964 (7th Cir. 2002).[8] In any event, Jury Instruction 16, derived from Seventh Circuit Pattern Instruction 4.04, was not erroneous, particularly in light of the fact that (1) the indictment alleged possession "on or about" January 29, 2007, (2) possession of a firearm in a continuing offense, and (3) I gave a general unanimity instruction. See United States v. Jackson, 479 F.3d 485, 491 (7th Cir.), cert. denied, 128 S. Ct. 49 (2007) (rejecting a similar argument in a gun case). Defendant makes no specific showing of prejudice based on this Instruction.

Fourth, defendant argues that admission of his recorded statement referring to a .22 caliber clip prejudiced him. Prior to trial, I granted defendant's motion in limine, excluding evidence of ammunition that did not match the two .25 caliber pistols defendant was charged with possessing. However, I cannot conclude that this single stray reference contained in one of defendant's statements about the guns at issue caused any substantial prejudice.

Thus, for the foregoing reasons, the Rule 33 motion will be denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's Rule 29 and Rule 33 motions are **DENIED**.

Dated at Milwaukee, Wisconsin, this 3rd day of January, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[8]At the very least, defendant forfeited any such challenge. See Fed. R. Crim. P. 30(d).

11