# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

    v.                                                     Case No. 07-CR-81

**ANTHONY DISMUKE**
    **Defendant.**

## SENTENCING MEMORANDUM

A jury convicted defendant Anthony Dismuke of possessing firearms as a felon, 18 U.S.C. § 922(g), and I set the case for sentencing. In imposing sentence, the district court must first calculate the guideline range, then select an appropriate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007). In this case, the pre-sentence report ("PSR") concluded that defendant qualified as an armed career criminal under 18 U.S.C. § 924(e), therefore subject a 15 year mandatory minimum. Defendant objected, but I concluded that the report accurately designated him an armed career criminal. I then imposed a sentence of 15 years' imprisonment.

## I. GUIDELINE – ACCA CALCULATION

Generally, the offense of felon in possession carries a maximum sentence of 10 years imprisonment. 18 U.S.C. § 924(a)(2). However, under the Armed Career Criminal Act ("ACCA), if the defendant has three or more prior convictions for a "violent felony" or "serious drug offense" he is subject to a sentence of 15 years to life. 18 U.S.C. § 924(e). In the present case, the PSR designated defendant an armed career criminal based on three Wisconsin convictions: (1) burglary in 1985, (2) armed robbery in 1985 and (3) fleeing in 1998. (PSR ¶

19.)[1]  Of these three potential predicate offenses, defendant challenged only the fleeing conviction.  He did in his objections also seek to exclude as possible predicates other convictions based on their age, restoration of his civil rights under § 921(a)(20), and/or lack of proof that he was represented by counsel.  However, because I concluded that defendant's more recent Wisconsin convictions sufficed, I did not address these other arguments under Fed. R. Crim. P. 32(i)(3).

First, the parties agreed that defendant's 1985 burglary and armed robbery convictions qualified as violent felonies under § 924(e)(2)(B).  These two convictions did not score criminal history points under the sentencing guidelines, but there is no similar time limit under § 924(e).  See United States v. Wright, 48 F.3d 254, 255-56 (7th Cir. 1995) (holding that the ACCA "does not place any time restrictions on the felonies" and declining to adopt the temporal limits contained in the guidelines or Fed. R. Evid. 609(b)).

Second, I found that defendant's 1998 fleeing conviction also qualified.  In United States v. Howze, 343 F.3d 919, 921-22 (7th Cir. 2003), the court of appeals held that fleeing under Wisconsin law is a violent felony under the ACCA.  The court noted that such conduct always creates a serious potential risk of physical injury to another.  See also United States v. Rosas, 410 F.3d 332 (7th Cir. 2005) (holding that fleeing is a crime of violence under the career offender guideline).

Defendant attempted to distinguish Howze on the grounds that the state complaint charged him with "attempted eluding."  However, the judgment lists the conviction as "Vehicle

---

[1]The report also referenced a possession of marijuana with intent to deliver conviction, but this conviction did not carry a maximum term of imprisonment of 10 years or more, so it did not qualify under § 924(e)(2)(A).

2

Operator Flee/Elude Officer." In any event, Wis. Stat. § 346.04(3) does not create two different offenses, one complete and the other inchoate. Rather, as the Howze court noted, the statute makes it a crime to "'knowingly flee or attempt to elude any traffic officer.'" 343 F.3d at 921 (quoting Wis. Stat. § 346.04(3)). Further, as the government noted, defendant's conviction could be considered "attempted" eluding only because the police caught him. It would make little sense to have classification of this offense turn on whether the defendant was ultimately successful in getting away; the risk of injury is the same regardless of the outcome of the chase. Cf. James v. United States, 127 S. Ct. 1586, 1591 (2007) ("We conclude that nothing in the plain language of clause (ii), when read together with the rest of the statute, prohibits attempt offenses from qualifying as ACCA predicates when they involve conduct that presents a serious potential risk of physical injury to another.").

Defendant cited legislative history materials on the nature of the risk created by this crime. It is true that the Wisconsin legislature recently created a misdemeanor version of the crime under Wis. Stat. § 346.04,[2] in recognition of the fact that some offenses did not warrant felony treatment. However, defendant was convicted of a felony violation of § 346.04(3), such offense conduct remains a felony today, and I am bound by the Seventh Circuit's characterization of that offense.

Defendant also noted that there need not be any pursuit by the officer in a fleeing case, meaning that the offense can be committed under circumstances that do not pose a serious risk. However, the Seventh Circuit has held that the ACCA is concerned with "an assessment

---

[2]Specifically, § 346.04(2t) provides: "No operator of a vehicle, after having received a visible or audible signal to stop his or her vehicle from a traffic officer or marked police vehicle, shall knowingly resist the traffic officer by failing to stop his or her vehicle as promptly as safety reasonably permits." This offense is a class A misdemeanor. Wis. Stat. § 346.17(2t).

3

of risk rather than actual outcomes," Howze, 343 F.3d at 922, and the court of appeals has concluded that a violation of § 346.04(3) presents such a risk under a categorical approach. See also United States v. Golden, 466 F.3d 612, 614 (7th Cir. 2006) (stating that the benchmark should be the possibility of violence, not whether one can postulate a non-confrontational hypothetical scenario).

Defendant cited United States v. Sparks, 87 F.3d 276 (9th Cir. 1996), but that case concerned a Nevada statute prohibiting "invasion of the home," a crime the Ninth Circuit found created some risk of injury, but "not enough of a risk." The Seventh Circuit reached a different conclusion regarding fleeing, so Sparks did not help defendant.

Finally, defendant noted that the Supreme Court recently heard argument in a case addressing whether drunk driving qualifies as a violent crime under the ACCA. The defense argument in that case primarily appears to be that drunk driving should not qualify because it does not require any mens rea. See Transcript of Oral Argument at 6, Begay v. United States, No. 06-11543 (Jan. 15, 2008). However, the fleeing statute at issue in this case requires the defendant act "knowingly." Thus, it is not comparable with drunk driving in that respect.

Therefore, I found that defendant qualified as an armed career criminal based on these three convictions set forth in ¶ 19 of the PSR.[3] Defendant's final guideline calculations accordingly were offense level 33, U.S.S.G. § 4B1.4(b)(3)(B), criminal history category V, and

---

[3] Defendant also objected to the scoring of a municipal marijuana possession conviction in ¶ 44 of the PSR. That conviction was entered on February 5, 1997, (just) less than ten years prior to defendant's commission of the instant offense on January 29, 2007. Therefore, it scored under U.S.S.G. § 4A1.2(e)(2). This conviction increased defendant's criminal history score from 9 to 10, resulting in a criminal history category of V rather than IV. I considered under 18 U.S.C. § 3553(a) defendant's argument that this conviction, apparently entered by default and without counsel, had a disproportionate impact on the guideline range.

4

210-262 months imprisonment.

## II. SECTION 3553(a)

### A. Sentencing Factors

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In making this determination, the district court may not presume that the guideline sentence is the correct one or elevate the guidelines above the other factors in the statute. See, e.g., Rita v. United States, 127 S. Ct.
5

2456, 2465 (2007); United States v. Schmitt, 495 F.3d 860, 864-65 (7th Cir. 2007); United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, it is the statute's "parsimony provision that serves as 'the guidepost for sentencing decisions post-Booker.'" United States v. Santoya, 493 F. Supp. 2d 1075, 1077 (E.D. Wis. 2007) (quoting United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006)). However, "Booker does not license district courts to employ § 3353 to disregard statutory mandatory minimum sentences." United States v. James, 487 F.3d 518, 530 (7th Cir. 2007).

**B. Analysis**

### 1. Nature of Offense

On January 29, 2007, police executed a search warrant at 2528 West Locust Street, Milwaukee, which they believed to be defendant's home. Defendant and his granddaughter were present at the time, and officers recovered two handguns from a bedroom that contained various identifiers for defendant. Defendant also made various statements to the officers about the guns. Defendant later denied that he lived there or knowingly possessed the guns, but the jury concluded otherwise and convicted him of felon in possession.

The record contained no evidence that defendant ever used the guns, threatened anyone with them, or carried them on his person. Therefore, the offense conduct was not in any way aggravated.

### 2. Character of Defendant

Defendant was fifty-one years old and had a serious and very lengthy record containing crimes of violence, theft, drug offenses and gun cases. Although his violent offenses seemed

6

to be in the past, he continued to commit crimes as he aged, including convictions for operating a vehicle without owner's consent and possession with intent to deliver marijuana within the past four to five years. He also had little employment record, particularly for someone his age.

Defendant was married from 1991 to 2003 and had three adult children. His ex-wife made positive statements to the PSR writer, as did his daughter. Numerous family members appeared in support at defendant's sentencing hearing. I also received a positive letter from his pastor, indicating that defendant was involved in the church.

Defendant reported some health problems, but it was not clear how serious they were. He admitted a problem with alcohol, as well as past use of marijuana and cocaine. His early screens on pre-trial release in this case were positive for marijuana, but negative thereafter. He largely complied with pre-trial release before he was remanded after the jury's verdict.

### 3. Guidelines and Purposes of Sentencing

The guidelines called for a term of 210-262 months and the statute required a sentence of 180 months. Under all of the circumstances, I found a sentence of 180 months sufficient but not greater than necessary. No more was needed to provide just punishment. The guns were found under a bed in a shared home, not on defendant's person or in his car. There was no indication that he ever used the guns or possessed them for any purpose other than protecting the home. See 18 U.S.C. § 3553(a)(2)(A).

Defendant's record was serious, but a sentence of 15 years was sufficient to protect the public. See § 3553(a)(2)(C). He will be in his mid-60's when released. I also considered the fact that defendant's criminal history category was increased from IV to V based on the inclusion of the 1997 marijuana possession conviction, which was obtained in municipal court, apparently by default, and scored by only a few days. But for that conviction, the guideline

7

range would have been 188-235 months.

Likewise, a 15 year sentence – three times as long as any previous sentence he had served – was sufficient to deter him from re-offending. See § 3553(a)(2)(B). This sentence varied a bit from the guidelines, but was supported by the particular facts of the case, so it did not create unwarranted disparity. See § 3553(a)(6).

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 180 months. I recommended that he be placed at a facility as close to Milwaukee as possible and participate in any substance abuse treatment available, including the 500 hour program. Upon release, I ordered him to serve three years of supervision, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge